**Gerdi PARK, Appellant,**

v.

**SECURITY BANK AND TRUST COMPANY, a corporation; and Montgomery Ward and Company, Inc., a corporation, Appellees.**

**No. 44032.**

Supreme Court of Oklahoma.

June 26, 1973.

Rehearing Denied July 24, 1973.

Rhoads, Johnson & Antonelli by Sam H. Johnson, Lawton, for appellant.

Lawton Burton and L. Myron Burton, Lawton, Granville Tomerlin and Jack High, Oklahoma City, for appellee, Montgomery Ward & Co., Inc.

Ralph W. Newcombe, Lawton, John B. Doolin, Oklahoma City, for appellee, Security Bank & Trust Co.

IRWIN, Justice:

Appellant Gerdi Park (plaintiff) instituted this action against appellees to recover damages allegedly sustained by her when Security Bank & Trust Co., (Bank) dishonored her personal check given to Montgomery Ward & Co. (Ward); criminal charges were filed against her by Ward; a warrant for her arrest issued; and the criminal charges subsequently dismissed.

The jury returned a verdict for plaintiff in the sum of $239.94 and judgment was rendered thereon. Plaintiff appealed from the order overruling her motion for a new trial.

The record discloses that plaintiff gave Ward a check in the amount of $49.41 as a down payment on some drapes. The check was duly presented to Bank and it was returned with a notation "account closed". Thereafter, Ward filed a criminal complaint and a warrant was issued for plaintiff's arrest on a bogus check charge. After the deputy sheriff arrived at plaintiff's place of employment, which was a P-X at Fort Sill, telephone calls disclosed plaintiff, during all times pertinent, had ample funds

in Bank to cover this check. The deputy then left and the charges were dismissed.

The check in question did not have plaintiff's name printed on it. Bank denied in its answer that it wrongfully dishonored plaintiff's check and alleged that the check did not bear a proper signature and the signature was so poorly written that it was illegible and could not be identified as plaintiff's signature. Bank submitted evidence that it thought the check was drawn on the account of a former customer of the bank by the name of "Poole" and that account had been closed.

Plaintiff sought to recover from both defendants the sum of $119.97 in actual damages and $350,000.00 for consequential damages for the dishonor, arrest and prosecution. Plaintiff also sought to recover $100,000.00 against Ward for punitive damages. The trial court refused to instruct the jury upon the issue of punitive damages.

Plaintiff first contends the trial court erred in not granting her a new trial as the damages were grossly inadequate and appeared to have been given under the influence of passion or prejudice.

In support of this contention plaintiff relies on 12 O.S.1971, § 651, sub-paragraph 4, which pertains to a new trial being granted for excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice. This sub-paragraph was amended in 1953 by adding inadequate damages.

It is now generally recognized, in the absence of a statute to the contrary, that a verdict may be set aside on the grounds of inadequate damages either on appeal or by the trial court under circumstances similar to those which justify the setting aside of an excessive verdict. 22 Am.Jur.2d "Damages" § 398.

Before a verdict of the jury will be set aside as excessive it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption. Austin Bridge Co. v. Christian, Okl., 446 P.2d 46. Since inadequacy of damages is considered under circumstances similar to those which justify the setting aside of an excessive verdict, we merely substitute the word "inadequate" for the word "excessive" in the above rule.

To determine if the damages awarded are inadequate it is necessary to summarize the pertinent evidence and consider the jury verdict in conjunction with the above rule. The sheriff's office called plaintiff early on a Friday morning and advised her a deputy was on the way to her place of employment on this bogus check charge. After the mistake was resolved the deputy left and plaintiff stated she was embarrassed, humiliated, upset and nervous; that another employee gave her a tranquilizer and she continued to work until 7:00 that evening; that she complained of pain in her back and legs, and after she completed her work about 4:00 p. m., on Sunday she went to the emergency room at the Fort Sill hospital and the doctor gave her some medicine and sent her home; and she remained away from work the next 10 days and during this time she received heat treatments and exercises at the base hospital.

The only persons with plaintiff when the deputy arrived at her place of employment were her superiors, who were the ones that straightened out the misunderstanding. The first employee arrived as the deputy was leaving and did not observe the incident. During the day plaintiff telephoned her neighbors and told them about the incident and discussed the matter further when she got home from work. Plaintiff stated her fellow employees never discussed the incident in a malicious or mean kind of way and they were just kidding her; that she had not tried to borrow money since this incident and had no evidence her credit had been injured in any way; that she had no reason to believe her reputation had been damaged from this incident.

Plaintiff visited a psychiatrist two years after this incident, at the request of her attorney. The doctor's testimony reflects that during the second World War, when plaintiff was a young woman, she was subjected to a considerable emotional trauma when she was picked up by the Gestapo and placed in a labor camp for about four months; that this check incident, including the presence of the deputy sheriff at the base P-X, caused her to become frightened, upset, nervous and resulted in muscle tension; that this check incident was merely a stimulus that reactivated her old anxieties from the Gestapo experience and brought about an anxiety tension reaction resulting in her remaining home from work for ten days.

It appears plaintiff was the one that related this check incident to her fellow employees as well as her neighbors. Thus, the jury could logically have concluded plaintiff brought about much of her own alleged disgrace, embarrassment and humiliation; and that plaintiff's muscle tension and anxiety tension which caused her pain was the result of her previous Gestapo experience.

■ Plaintiff proved $119.97 damages for loss of wages and this was not disputed. There was no evidence of any medical expenses. Owing to the special nature of damages plaintiff claimed for shame, embarrassment and humiliation, which the law leaves largely to the jury's common sense, judgment and/or discretion, without a definite yard stick, or rule of measurement, to go by, this Court is virtually restricted to merely ascertaining if there is any competent evidence reasonably tending to support the jury's verdict. John A. Brown Company v. Shelton, Okl., 391 P.2d 259. Also see Browning v. Ray, Okl., 440 P.2d 721. We conclude there is such evidence to support the verdict.

■■ It is the function of the jury to properly evaluate the various elements of alleged damages. It was in a position to see the plaintiff and the witnesses and in a better position to evaluate the damages than this Court on appeal. We can logi-cally assume the jury felt the balance of the award, above loss of wages, would adequately compensate plaintiff for her other elements of damage. After considering the above evidence we conclude the damages awarded to plaintiff were not so inadequate as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption. Therefore, the trial court properly denied plantiff a new trial based on the inadequacy of damages.

Plaintiff next contends the verdict is not sustained by sufficient evidence and was against the clear weight of the evidence. In this connection she also argues the trial court erred in not granting her a new trial.

Plaintiff argues the jury only awarded her compensation for the actual loss of wages in the sum of $119.97 and did not award her compensation for other items of damage proved, such as, embarrassment, humiliation, pain, mental anxiety, etc. This argument is contrary to the verdict which awarded plaintiff damages in the total sum of $239.94. This total sum includes the undisputed loss of wages in the sum of $119.-97 and a like amount for the balance of plaintiff's damages.

Plaintiff cites Downing v. Mealy, 204 Okl. 247, 228 P.2d 1008, to sustain her argument that since the trial court disagreed with the verdict it erred in not granting her a new trial because of the insufficiency of the evidence to sustain the verdict.

In Cosmo Construction Company v. Loden, Okl., 352 P.2d 910, we said that this Court sanctioned the setting aside of a verdict by trial courts on the sole ground of disagreement of the verdict in the following cases: Fisher v. Hopkins, 205 Okl. 134, 235 P.2d 944; Downing v. Mealy, 204 Okl. 247, 228 P.2d 1008; Tulsa City Lines v. Howell, 202 Okl. 394, 214 P.2d 255; and Little v. Lovett, 193 Okl. 157, 141 P.2d 794. However, we pointed out that the "above-mentioned rule has been repudiated in our more recent decisions, and to that extent the cases cited must be considered as overruled".

On appeals it matters not that we might or might not have reached a different conclusion as to the amount of damages sustained; nor that we might or might not feel that the evidence adduced would have sustained a larger verdict. The only question concerning the sufficiency of the evidence is whether there is any competent evidence to sustain the verdict. Battles v. Janzen, Okl., 325 P.2d 444.

The sufficiency of the evidence to sustain a judgment in an action of legal cognizance will be determined in the light of the evidence tending to support the same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it. Smith v. Davis, Okl., 430 P.2d 799.

The verdict is sustained by competent evidence.

Plaintiff also argues the form of the verdict itself is sufficient to grant her a new trial and calls our attention to the fact that after the jury awarded the total damages they apportioned the damages equally between Bank and Ward. In Schuman v. Chatman, 184 Okl. 224, 86 P. 2d 615, we considered a verdict that also apportioned the damages among the defendants and said the defect went to the form of the verdict rather than its substance. In that case the verdict was received in the presence of counsel without objection on his part and the jury was discharged. The verdict was made an issue on appeal and we said it was admittedly improper for the jury to have attempted apportionment of the damages among the defendants. In that case we also said that the absence of objection by counsel relieves the court of the responsibility of attempting by reformation to preserve a right which a party did not at the appropriate time deem of sufficient moment to warrant an objection. We declined to disturb the judgment by reason of the form of the verdict upon which it was based.

The record discloses the verdict in question was received in the presence of plaintiff's counsel, without objection, and the jury was discharged. We conclude plaintiff's objection to the form of the verdict comes too late. Under these conditions we decline to disturb the judgment of the trial court by reason of the form of the verdict.

We will now consider plaintiff's contention that the trial court erred in failing to instruct the jury on the issue of punitive damages. Plaintiff argues the acts of Ward were grossly negligent, willful and malicious, and warranted the submission of this issue to the jury.

23 O.S.1971, § 9, provides that in an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant.

In Kurn v. Radencic, 193 Okl. 126, 141 P.2d 580, we said to entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some element of fraud, malice or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent.

In Tomlinson v. Bailey, Okl., 289 P.2d 384, we held:

"Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and are allowed only in cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, but a person may commit such wilful acts in reckless disregard of another's rights that malice will be inferred."

In Imo Oil & Gas Company v. Knox, 154 Okl. 100, 6 P.2d 1062, Knox obtained a judgment in the sum of $8,000.00 for actual damages and $3,000.00 for puni-

tive damages in an action for malicious prosecution. Therein we held:

"The elements entering into and necessary to be shown in a suit for damages for malicious prosecution are: (1) That the prosecution was commenced against plaintiff; (2) that it was instituted or instigated by defendant; (3) that it was malicious; (4) that it has been legally and finally terminated in plaintiff's favor; (5) that it was without probable cause."

And we said:

"The third element of the action for malicious prosecution, malice, does not necessarily mean 'malus animus,' i. e., that the action complained of was actuated by ill will or hatred toward the person prosecuted. It is sufficient if the known and necessary consequence of the act done is injury to that person. 'By it is meant an unreasonable and wrongful act done intentionally, without just cause or excuse.' Schonwald v. Ragins, 32 Okl. 223, 122 P. 203. When it so appears the law will imply malice. However, express malice, i. e., actual ill feeling toward the person injured, may also be proved to exist, and in the cause at bar there was evidence tending to prove express malice. When so established, it forms a basis for exemplary damages, irrespective of that arising by presumption. Section 5975, C.O.S. 1921."

In Imo, on consideration of the contention that the trial court erred in giving an instruction on punitive damages we said there was no error for there was proof tending to show express malice.

 Imo discloses that in an action for malicious prosecution the proof necessary to establish malice for actual damages is different from the proof necessary to establish punitive damages. In an action for actual damages, the action complained of need not be actuated by ill-will or hatred toward the person prosecuted, but it is sufficient if the known and necessary consequence of the act done will injure that person.

However, when Imo is construed in connection with other cases concerning punitive damages, to establish express or actual malice in an action for malicious prosecution, the action complained of must be actuated by ill-will or hatred, or wilfully done in a wanton and oppressive manner and in conscious disregard of the other's rights.

The record will not sustain a finding that Ward's actions were actuated by ill-will or hatred toward plaintiff, or that such acts were wilfully done in a wanton and oppressive manner and in conscious disregard of plaintiff's rights. We hold the trial court did not err in refusing to submit to the jury the issue concerning punitive damages.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, LAVENDER, BARNES, SIMMS and BLISS, JJ., concur.

Justice JOHN B. DOOLIN having certified his disqualification in this case, Honorable C. F. BLISS was appointed in his stead.