*250
 
 BARRETT, Circuit Judge.
 

 Bryan County National Bank (Bank) appeals a jury verdict and judgment entered on behalf of Wayne Kitchens (Kitchens) for malicious prosecution. The Bank alleges that there was insufficient evidence to support a verdict in Kitchens’ favor, that there was insufficient evidence to support an award of punitive damages, that the trial court erred in excluding certain evidence and refusing to instruct the jury as the Bank requested, and that Kitchens’ claim was barred by the statute of limitations because effective service of process was not timely made. Our review of the record convinces us that these claims are without merit and we will affirm.
 

 Facts
 

 Kitchens and his erstwhile wife, Ellen Flowers Kitchens, were engaged in a small-scale ranching business near Caddo, Oklahoma, for some thirteen years. Their course of dealing with the Bank included the use of a flexible credit arrangement to finance the purchase of young steers and heifers. Generally, the Kitchens would purchase the cattle with a check drawn on their account at the Bank and then meet with Billy Miller, the president of the Bank, to arrange the financing. Billy Miller would then advance the amount they needed using the cattle as security. Since Billy Miller’s property was adjacent to the Kitchens’, he could keep track of the number of cattle on the Kitchens’ land, although he testified that he usually formally inspected the cattle each time one of these transactions was made.
 

 When the cattle had gained enough weight to be profitable, the Kitchens would sell them, repay the Bank, and keep their profit. This arrangement continued from 1978 or 1979 until 1981.
 

 In November, 1980, the Kitchens purportedly purchased 50 head of cattle to add to 123 head that were already on the property. Miller testified that he inspected the cattle and prepared an inspection report on December 7 and 8, 1980. The promissory note and security agreement evidencing the debt for these cattle had been signed by Ellen Kitchens on November 7, 1980. It was agreed that Wayne Kitchens would sign the note at a later date. Also on December 8,1980, two previous promissory notes and security agreements were rolled over into a new note. Some of these cattle were included on the December inspection report. The parties dispute, however, whether there were a total of 123, or 173, head of cattle on the Kitchens’ land. The Bank argues that in fact the Kitchens had 173 cattle on December 7, 1980, although the cattle inspection report of that date listed only 123 cattle. Kitchens maintains that the 50 cattle evidenced by the November, 1980 note had never existed and that Miller knew or should have known this.
 

 In April, 1981, Wayne Kitchens filed a petition for divorce from Ellen Kitchens. Thereafter, Kitchens met with Miller, indicated he wanted their banking relationship to continue, and signed the two notes pledging, respectively, 50 and 123 head of cattle as security. Kitchens testified that when he signed the notes, he only had 123 head of cattle, and by the time he sold them in October, 1981, ten had died. Miller apparently had inspected the cattle in August or September, 1981, and realized that there was a numerical discrepancy. He failed to pursue the matter at the time, however.
 

 After Kitchens sold the cattle in October, 1981, he delivered the proceeds to the Bank. There were insufficient funds to cover the principal and interest on the two notes. In January, 1982, Kitchens filed a voluntary petition in bankruptcy, listing the Bank as a secured creditor on both promissory notes. The Bank filed an adversary complaint, however, asking the court not to discharge Kitchens’ debts to the Bank. In May, 1982, the bankruptcy judge denied the Bank’s complaint, finding that the debt- or had satisfactorily explained the loss of assets. (R., Vol. I, pp. 15-19, Ex. B.)
 

 Thereafter, in May or June, 1982, Miller contacted the Bryan County District Attorney to discuss whether charges should be filed concerning the missing 50 head of cattle. At no time in the trial was it clear whether these cattle had been disposed of
 
 *251
 
 by Kitchens or whether, as he testified, he had never in fact owned them.
 

 The District Attorney filed criminal charges against both Kitchens and his ex-wife alleging that they had unlawfully disposed of encumbered property, specifically the mysterious 50 head of cattle. At the preliminary hearing on April 14, 1983, the District Attorney offered to dismiss the charges against both of the Kitchens if they would sign covenants not to sue the Bank. Ellen Kitchens agreed to this disposition, but Wayne Kitchens did not. At the hearing, the court sustained Kitchens’ demurrer to the State’s evidence and the criminal charges were dismissed on April 20, 1983. Kitchens moved to Arkansas during the pendency of the criminal charges and filed the instant case in the United States District Court for the Eastern District of Oklahoma on March 29, 1984, based on diversity of citizenship.
 

 I.
 

 The Bank argues that the evidence outlined above failed to establish malicious prosecution as a matter of law and failed to establish conduct for which punitive damages would be appropriate. The Bank also disputes the evidence as to actual damages. The standards for appellate review set forth below and our review of the evidence persuades us that these contentions have no merit.
 

 In
 
 Rasmussen Drilling v. Kerr-McGee Nuclear Corp.,
 
 571 F.2d 1144 (10th Cir.),
 
 cert. denied,
 
 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978), we discussed the standards governing appellate review of a jury verdict following trial of a diversity based civil case. There we held that our review in relation to evidence was limited to the inquiry as to whether the record contains substantial evidence to support the jury’s or court’s conclusion, viewing the evidence in the light most favorable to the prevailing party.
 
 Id.
 
 at 1149. The jury, moreover, has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.
 
 Id.
 
 We, the appellate court, do not try to second-guess the jury, nor is it our function to infer material facts or to make controlling inferences which the trial court, or jury, has not inferred or made and which, if done, would in effect constitute trial de novo.
 
 Id.
 
 at 1148.
 

 Bearing these standards in mind, we turn to the elements necessary to establish malicious prosecution: (1) that the prosecution was commenced against plaintiff; (2) that it was instituted or instigated by defendant; (3) that it was malicious; (4) that it has been legally and finally terminated in plaintiff’s favor; and (5) that it was without probable cause.
 
 Park v. Security Bank and Trust Co.,
 
 512 P.2d 113 (Okl.1973).
 

 The Bank contends that there is insufficient evidence in the record that the Bank instituted or instigated the prosecution against Kitchens because the District Attorney testified that he undertook an investigation and assumed responsibility for filing the criminal prosecution. We cannot say that there was not substantial evidence to the contrary, however, or that the jury could not reasonably have inferred that the Bank instigated the charges. In particular, we note the undisputed fact that Billy Miller signed the complaint. It was also undisputed that Billy Miller took the matter to the district attorney initially, and appeared to testify on the two or three occasions when the preliminary hearing was scheduled, continued, and rescheduled. These are merely factors which come readily to mind. There was substantial other evidence in the record to support a conclusion that the Bank instigated the prosecution.
 

 The Bank further contends that there was no evidence of malice as it applies to malicious prosecution. In
 
 Imo Oil & Gas Co. v. Knox,
 
 154 Okl. 100, 6 P.2d 1062 (1932), the same argument was made. The Oklahoma Court held:
 

 The third element of the action for malicious prosecution, malice, does not necessarily mean ‘malus animus,’ i.e. that the action complained of was actuated by ill
 
 *252
 
 will or hatred toward the person prosecuted. It is sufficient if the known and necessary consequence of the act done is injury to that person. ‘By it is meant an unreasonable and wrongful act done intentionally, without just cause or excuse.’
 

 Id.
 
 at 1064.
 

 The jury, not this court, was in a position to evaluate Billy Miller’s motives for contacting the District Attorney. It was for the jury to decide whether Miller’s conduct amounted to “an unreasonable and wrongful act done intentionally, without just cause or excuse,” or whether it in fact was prompted by “malus animus,” or ill will. Inasmuch as there is substantial evidence in the record to support the jury’s conclusion as to malice, we will not disturb the verdict for this reason, either.
 

 The Bank maintains that if there is evidence of probable cause, it is a complete defense to a malicious prosecution action regardless of the motives of the defendant. The Bank argues that the evidence can only be interpreted one way, and that it is undisputed that Miller had probable cause to believe that Kitchens had committed a criminal offense. From this, the Bank contends that according to
 
 Williams v. Frey,
 
 182 Okl. 556, 78 P.2d 1052, 1055 (1938), the existence of probable cause is a question of law for determination by the court rather than the jury. In our view, however, this issue presents a factual dispute.
 
 Patrick v. Wigley,
 
 206 Okl. 194, 242 P.2d 423 (1952), holds that where there are material facts in dispute, such as whether the defendant misrepresented or concealed facts from the attorney he consulted, the existence of probable cause is a question of fact.
 

 In this case, the issue of whether Billy Miller reasonably believed that Wayne Kitchens committed a criminal offense depended to a large extent on whether the jury believed that Billy Miller had actually seen the mysterious 50 head of cattle, or whether they believed Kitchens’ testimony that the cattle had never existed and Billy Miller should have known they never existed. Inexplicably, the District Attorney presented no evidence pertaining to the promissory note secured by these 50 cattle, nor did an extensive investigation reveal evidence of an unauthorized sale of these cattle. Instead, evidence presented in the preliminary hearing concerned the sale of the 123 head, of which ten had died, with the knowledge and tacit consent of Billy Miller. The 123 head were not the subject of the criminal charges. Moreover, the manner of sale of the 123 head was entirely consistent with Kitchens’ course of dealing with the Bank, and it is not surprising that the charge was dismissed.
 

 The fact that the District Attorney was evidently so confused that he did not present evidence underlying the criminal charge suggests to us that the jury had justification for concluding that Miller may not have made a full disclosure of the facts to the District Attorney. In sum, there was substantial evidence of a lack of probable cause. The Bank was entitled to an instruction as to probable cause, which the court gave (R., Vol. IV, pp. 605, 606), but only the jury was entitled to make the final decision as to whether probable cause existed.
 

 In addition to its assertion that the evidence was insufficient to justify the verdict, the Bank complains that the trial court prejudiced its case by not permitting Billy Miller to testify as to the advice the Bank attorney gave him. We note that the attorney, Wilson Jones, was not listed as a witness in the pretrial order (R., Vol. I, pp. 54-64), nor did the Bank either attempt to add his name to its list of witnesses or call him to testify at trial. There is nothing in the record indicating that Mr. Jones was unavailable as a witness.
 

 We held in
 
 Smith v. Ford Motor Co.,
 
 626 F.2d 784 (10th Cir.1980)
 
 cert. denied,
 
 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), that the pretrial order “measures the dimensions of a lawsuit, both in the trial court and on appeal.”
 
 Id.
 
 at 795 (citations omitted). The pretrial order in the instant case measured the dimensions of this lawsuit. The Bank did not list Wilson Jones as a witness, and the nature of his testimony was not made known. Thus, the plaintiff was unprepared to contend with
 
 *253
 
 Mr. Jones’ testimony. The plaintiff had not been accorded the opportunity to take Mr. Jones’ deposition nor to interrogate Billy Miller in detail as to what Mr. Jones advised him to do. The trial court recognized the
 
 Smith v. Ford Motor
 
 problem when it twice inquired of counsel for Bank whether Bank had listed Jones as a witness. (R., Vol. IV, p. 403.) Yet, the Bank attempted to introduce Mr. Jones’ testimony through the hearsay and self-serving testimony of Billy Miller. The trial court implicitly recognized that this was improper when it instructed counsel to ask Billy Miller if he had talked to Jones and, based on the conversation, what he did next.
 
 Id.
 
 The court would not permit the Bank to elicit the content of Billy Miller’s conversation with Wilson Jones.
 

 We hold the trial court properly excluded this testimony. The testimony was important to the Bank’s case, since, under
 
 Lewis v. Crystal Gas Co.,
 
 532 P.2d 431 (Okl. 1975), a defendant who acts in good faith reliance upon the advice of counsel is relieved from liability for a civil action instituted by him. Whatever the Bank’s reasons were for omitting Jones as a witness, it cannot now claim prejudice. It is the duty of the litigant to determine how to prove or defend his case.
 

 We additionally note that the exclusion of the evidence in question did not render the defense of advice of counsel unavailable. The jury was instructed that full disclosure to the district attorney was a complete defense to malicious prosecution (R., Vol. IV, p. 606). The jury apparently did not believe that Billy Miller fully disclosed the facts. In
 
 James v. Newspaper Agency Corp.,
 
 591 F.2d 579 (10th Cir.1979), we held the trial court’s exclusion of evidence which would not affect the outcome was harmless. In our view, the exclusion of Billy Miller’s testimony about a conversation with Wilson Jones could not have affected the jury’s conclusion that Billy Miller did not disclose all of the facts to the district attorney.
 

 The Bank also disputes the sufficiency of the evidence to support an award of damages, either actual or punitive. We find no merit in this contention. In
 
 Browning v. Ray,
 
 440 P.2d 721 (Okl.1968), the Oklahoma Supreme Court held that although the plaintiff must prove specific damages such as loss of earnings or profits from a business, general damages for injury to reputation and emotional or mental distress may be awarded assuming the essential elements of malicious prosecution are established. Kitchens adequately established both his specific damages and the essential elements of his case. We hold that the $65,000 award is not excessive.
 

 The Bank further contends that the court erred in submitting the question of punitive damages to the jury because there was no evidence of “fraud, oppression, gross negligence or malice.”
 
 Chavez v. Sears, Roebuck & Co.,
 
 525 F.2d 827, 829 (10th Cir.1975). The Bank argues that these are the only circumstances under which Oklahoma law permits a jury to consider punitive damages.
 

 In
 
 Sunray DX Oil Co. v. Brown,
 
 477 P.2d 67 (Okl.1970), the court held that punitive damages were proper when there was “such recklessness and wanton disregard of another’s right that malice and evil intent may be inferred.”
 
 Id.
 
 at 70. Such an inference is reasonable from the evidence in the instant case. Moreover, in
 
 Oller v. Hicks,
 
 441 P.2d 356 (Okl.1967), the court held that when the evidence shows criminal indifference to the plaintiff’s rights, exemplary damages are “peculiarly within the province of the jury, whose verdict will not be interfered with lightly upon the claim of excessiveness.”
 
 Id.
 
 at 360. We do not regard the punitive damages award in the instant case to be the product of passion or prejudice, nor do we consider it excessive in light of the evidence.
 

 Finally, the Bank claims that the trial court erred both in refusing to submit to the jury the Bank’s advice of counsel instruction and its instruction on the issue of malice. In
 
 Chavez v. Sears, Roebuck & Co.,
 
 525 F.2d at 830, we held that in order to charge a trial court with a failure to properly instruct the jury, it must be determined whether there is sufficient evidence
 
 *254
 
 in the record to support submission of a tendered instruction. Our examination of the record satisfies us that the trial court properly instructed on these matters.- And, contrary to the Bank’s assertion, the trial court did, in fact, instruct the jury that advice of counsel was a defense to malicious prosecution (R., Vol. IV, p. 606). Although the wording in the instruction given by the court differed from the wording in the instruction requested by the Bank, the substance was the same.
 

 The Bank’s argument that the court’s instruction on malice
 
 [1]
 
 was error depends on whether there was evidence pointing to an absence of probable cause for Kitchens to be criminally prosecuted. If probable cause existed, the Bank’s motives for instigating the case would be irrelevant. The Bank’s argument on this point is not only circular, but it presumes the existence of probable cause. Since we hold that there was substantial evidence of a lack of probable cause, the court’s instruction on malice was not erroneous.
 

 II.
 

 The Bank’s final assignment of error concerns the effects of service of process on the statute of limitations. The complaint in this case was filed close to the end of the one-year period of limitations provided by Oklahoma law. The Bank contends that although the running of the statute is tolled if effective service of process is made within sixty days of the filing of the complaint, such tolling did not take place here. The basis for this contention is the fact that the Bank was served with process by certified mail, addressed to the head cashier, one Nancy Miller. Both parties acknowledge that the return receipt, though bearing what appeared to be Nancy Miller’s signature, was signed not by Nancy Miller, but by Billy Miller, the president of the Bank. Under the Oklahoma statute governing service of process then in effect,
 
 [2]
 
 the return receipt could be signed only by the addressee. In
 
 Letteer v. Conservancy District No. 30,
 
 385 P.2d 796, 801 (Okl.1963), the Oklahoma court held that statutes substituting other than personal service must be strictly followed. Because someone other than the addressee signed the return receipt, the Bank argues that service was not properly made and the suit was not commenced within the period of limitations as prescribed by Oklahoma law.
 

 The issue raised by the Bank’s contention is whether this service of process attempted pursuant to Oklahoma law was ineffective. The trial court apparently agreed with the Bank’s position at a pretrial hearing and ordered Kitchens to achieve effective service within ten days of its September Order denying the Bank’s motion to dismiss. (R., Vol. I, pp. 9-10.) The Bank argues that effective service of process (i.e., personal service) was still not achieved, even after the court gave Kitchens another chance to do so. The trial court refused to consider this argument at the time of trial.
 

 The Bank’s contention is based on reasoning with which we agree, up to a point. We agree that the trial court was required to apply Oklahoma law in considering whether Kitchens’ action was barred
 
 *255
 
 by the applicable statute of limitations.
 
 Ragan v. Merchants Transfer & Warehouse Co.,
 
 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949);
 
 Walker v. Armco Steel Corp.,
 
 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Okla.Stat. Title 12, § 97 (1981),
 
 [3]
 
 which was then in effect, deemed an action commenced if service of process was effected within sixty days of the filing of the complaint. In
 
 Walker v. Armco Steel Corp., id.,
 
 the Court held that this tolling provision was substantive. At this point, however, the Bank apparently assumed that the manner in which process was served was likewise substantive and may be governed only by Oklahoma law.
 

 In our view, the manner in which process is served is procedural, and is unrelated to the substantive aspects of the statute of limitations and its tolling provisions. In
 
 Hanna v. Plumer,
 
 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court addressed a similar situation in a diversity case. The plaintiff, a citizen of Ohio, filed a complaint in the United States District Court in Massachusetts for damages resulting from an auto accident in South Carolina. The defendant, a Massachusetts citizen, was deceased when the suit was filed and consequently her executor was named defendant. Service was made in compliance with Rule 4(d)(1) of the Federal Rules of Civil Procedure, by leaving copies of the summons and complaint with the executor’s wife at his residence. At the time, Massachusetts law provided that service upon the executor of a decedent’s estate could be made only “by delivery in hand,” with the result that service was ineffective under Massachusetts law, but effective under federal rules of procedure.
 

 The Court concluded that “[prescribing the manner in which a defendant is to be notified that a suit has been instituted against him, ... relates to the ‘practice and procedure of the district courts.’ ”
 
 Id.
 
 at 464, 85 S.Ct. at 1140 (citation omitted). Thus, although service would have been invalid under Massachusétts law, the federal rule controlled. The Court noted that this decision in no way conflicted with the goal expressed in
 
 Erie R. Co. v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), i.e., that forum-shopping was to be discouraged and uniformity sought. The manner in which process is served is unlikely to influence the plaintiff’s choice of forum, whereas the tolling provision or length of the statute of limitations is very likely to. Thus in the instant case, if service of process was valid under federal rules of civil procedure, the cause may be deemed timely filed even if, as the Bank asserts, process was not valid under Oklahoma law.
 

 Assuming, arguendo, that process was ineffective under Oklahoma law, still there was no requirement that service be made in accordance with Oklahoma law. The Federal Rules of Civil Procedure allow several methods of affording notice to defendants, only one of which is dictated by state law. We note that service of process in the instant case complied with the spirit, if not the letter of the Fed.R.Civ.P. Rule 4. There is no question that Billy Miller, the president of the Bank, was a proper person to be served pursuant to Rule 4(d)(3). And although it appears from the record that only a copy of the summons and complaint were mailed and that the “notice and acknowledgment” and return envelope prescribed by Rule 4(c)(2)(C)(ii)
 
 [4]
 
 were omitted,
 
 *256
 
 “the federal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually receives notice.” Wright and Miller, 4
 
 Federal Practice and Procedure
 
 § 1074 at 295;
 
 Nowell v. Nowell,
 
 384 F.2d 951 (5th Cir.1967),
 
 cert. denied,
 
 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968).
 

 Moreover, in our view, and contrary to the Bank’s contention, service of process was valid pursuant to Oklahoma law. Service of process by certified mail was attempted within the sixty-day period prescribed by Okla.Stat. Title 12, § 97 (1981). The return receipt was signed by the president of the Bank instead of by the head cashier, to whom it was addressed. We note that the signature on the return receipt
 
 appears
 
 to be that of the addressee, even though the parties claim it was not Nancy Miller’s signature. Okla.Stat. Title 12, § 155(b), quoted
 
 supra
 
 in footnote 2, suggests that a return receipt
 
 appearing
 
 to bear addressee’s signature is sufficient. Further, a second attempt to serve
 
 both
 
 Nancy Miller and Billy Miller by mail within the sixty-day period resulted in return receipts marked “unclaimed.”
 

 It is true that such cases as
 
 Letteer v. Conservancy District No. 30,
 
 385 P.2d at 801, and
 
 Davis v. Rowland,
 
 206 Okl. 257, 242 P.2d 716 (1952), stand for the proposition that strict compliance with the notice statutes is necessary to perfect service. These cases, however, are distinguishable in that they deal with service by publication. In
 
 Snyder v. Southwestern Bell Tel. Co.,
 
 548 P.2d 218 (Okl.1976), the defendant’s agent for service of process was not available on the one occasion when service was attempted by mail. Postal notice of attempted delivery was left but the agent did not pick up the mailing. This was held ineffective service of process. In contrast, in the instant case, the Bank had actual notice when Billy Miller apparently signed the return receipt for Nancy Miller the first time service was attempted. On the second occasion, neither of them claimed the certified mailings. This was no fault of the plaintiff and does not reflect adversely on his diligence.
 

 In
 
 Williams v. Egan,
 
 308 P.2d 273 (Okl.1957), the Oklahoma court expressly overruled
 
 Hickes v. Hamilton,
 
 283 P.2d 1115 (Okl.1955), and other cases mandating strict compliance with notice statutes by requiring only substantial compliance with the applicable statutes under the circumstances of each case. The court noted that “such statutes need only to indicate that there is a reasonable probability that the defendants sued under such statute will receive actual notice.”
 
 Id.
 
 at 277. In the instant case, it is a virtual certainty that the defendants received actual notice. The sole flaw in the manner of service was occasioned by the Bank itself when one of the Bank’s agents signed the return receipt on the other’s behalf. That this should torpedo the plaintiff’s case would be a subversion of the notice statutes, as well as a miscarriage of justice.
 

 In Oklahoma, the object of the state notice statutes is to provide a method of notification which “is reasonably calculated to give [the defendant] knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be sent; the notice required will necessarily vary with the circumstances and conditions.... ”
 
 Bomford v. Socony Mobil Oil Co.,
 
 440 P.2d 713, 718 (Okl.1968) (citing
 
 Mullane v. Cent. Hanover Bank & Trust Co.,
 
 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). We hold that this goal has been accomplished under the circumstance of this case.
 

 In this case, the plaintiff made a diligent attempt to effect service on the Bank. The Bank received actual notice, but by accident or design it was technically defective. The Bank, having received actual notice of Kitchens’ suit, cannot now complain that service was ineffective.
 

 CONCLUSION
 

 Our examination of the record satisfies us .that no errors were made in the trial on
 
 *257
 
 the merits and that there is substantial evidence to support the verdict and the award of actual and punitive damages. Inasmuch as the Bank received actual notice, we hold that service of process was accomplished. Further, we hold that the cause was timely filed and was not barred by the statute of limitations.
 

 AFFIRMED.
 

 [1]
 

 . Bank’s counsel requested the following instruction:
 

 Lack of probable cause can never be inferred from malice alone. That is to say, even if you find malice existed, you must return a verdict for the defendant ... unless you also find that there was no probable cause to bring the prosecution. (R., Vol. I, p. 37.)
 

 The court instructed as follows:
 

 ‘Malice" or ‘malicious’ means the principal motive of the defendant was other than a desire to bring an offender to justice. Malice may be expressed or actual or inferred (R., Vol. IV, pp. 604-05).
 

 [2]
 

 . Okla.Stat., Title 12 § 153.1 (1981) provided:
 

 If the summons is to be served by mail, the clerk shall enclose the summons and a copy of the petition ... to be served in an envelope addressed to the defendant ... and mail said envelope to said defendant ... by certified mail with a request for a return receipt from addressee only.
 

 Okla.Stat., Title 12 § 155(b) (1981) provided: When the summons is issued for service by mail, service shall not be considered effected unless within twenty-one (21) days from the date on which summons was mailed by the clerk, the return receipt requested appearing to bear addressee’s signature is delivered to the court clerk who issued the summons.
 

 [3]
 

 . "An action shall be deemed commenced, within the meaning of this article, as to each defendant at the date of the summons which is served on him ... An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons, or if service is sought to be procured by mailing, by a receipt of certified mail containing summons, within sixty (60) days.”
 

 [4]
 

 . (C) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule— ...
 

 (ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18-A and a
 
 *256
 
 return envelope, postage prepaid, addressed to the sender....