BLACK v. FERRELLGAS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BLACK v. FERRELLGAS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BLACK v. FERRELLGAS
2018 OK CIV APP 38
417 P.3d 1267
Case Number: 114915
Decided: 12/19/2017
Mandate Issued: 05/09/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 38, 417 P.3d 1267

 

DERRICK BLACK, an individual, Plaintiff/Appellant,
v.
FERRELLGAS, INC., a Delaware Corporation, FERRELLGAS L.P., a Delaware Corporation, and JIMMY CHILDS, an individual, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE CAROLINE E. WALL, TRIAL JUDGE

AFFIRMED

Robert L. Rode, David C. Bean, RODE LAW FIRM, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant

Jennifer D. Ary, FRANDEN/FARRIS/QUILLIN GOODNIGHT+ROBERTS, Tulsa, Oklahoma, for Defendants/Appellees

JERRY L. GOODMAN, JUDGE:

¶1 Plaintiff Derrick Black appeals the trial court's March 22, 2016, Journal Entry of Judgment, entered on a jury verdict, in Plaintiff's vehicle negligence case. Based on our review of the facts and applicable law, we affirm the judgment.

BACKGROUND

¶2 Plaintiff was severely injured on March 6, 2009, in a single-vehicle, non-contact accident, when he struck a curb while riding his motorcycle. He alleged he was forced to take evasive action when a truck, driven by Defendant Childs, and owned by Defendants Ferrellgas, Inc. and Ferrellgas, L.P., entered his lane from a cross street in order to make a left turn.[1] Plaintiff sued Defendants, alleging negligence.

¶3 A key disputed fact, which forms the basis of this appeal, is whether Defendant Childs, who was operating the Ferrellgas truck, had actually entered the intersection, causing Plaintiff to take evasive action. Plaintiff testified he did, and Childs testified he did not.

¶4 What is undisputed is that Childs exited an expressway and had driven to the end of the off ramp, stopping at a stop sign, with the intention of turning left. The off ramp had a single right turn lane and two left turn lanes. Childs stopped his truck in the left lane of the double left turn lanes. What happened next is in dispute.

¶5 Plaintiff and his motorcycle approached the intersection from Defendant Childs' left, at a disputed rate of speed.[2] Childs testified he first stopped at the wide, painted white stop lines, just before the two narrower, white crosswalk lines. He testified he moved his truck forward from the wide white line to the narrower pedestrian line, and stopped once again. Not seeing Plaintiff approaching because of the curvature of the road, Child's wrote a statement at the scene of the accident at the request of the investigating officer in which he stated:

I was turning left from left hand left turn lane, inter-section was clear until motorcycle passed east bound on Apache stricking [sic] meadian [sic] becomeing [sic] airborn [sic] at high rate of speed. When motorcycle approach [sic] from my left I stopped. ...[3]

¶6 In a sworn deposition taken 18 months later and again at trial, Childs stated that he had: "stopped behind the first white line... ."[4] Then, "I proceeded to the crosswalk once I knew it was clear and stopped there ... to look again to make sure there wasn't any further traffic."[5] Childs continues, "So I pulled up to the line of the crosswalk to look left and back to the right and then looked left again ... and that's when I saw the motorcycle approaching."[6] Childs concluded, "When I stated that I had pulled out, I did not specify [to the investigating officer] how far I had pulled out. I had proceeded from the broad white line to the edge of the crosswalk to make sure that the intersection was still clear from both directions."[7]

¶7 It was at this point that Plaintiff, riding the motorcycle, encountered the intersection. He testified:

 A All I can remember is seeing something moving from that stop sign as I was coming out from under that highway, and ... all I can remember is just seeing something white. That's all I can remember.
Q Was it in your lane?
A Yes.[8]

¶8 There was no collision between the motorcycle and the Ferrellgas truck, but Plaintiff lost control of the motorcycle and crashed into a curb, suffering severe injuries. Whether the truck moved into the intersection became the focus of much testimony.

¶9 Plaintiff cross-examined Childs extensively regarding the apparent contradiction between Childs' written statement and his testimony at trial regarding whether Childs' vehicle was moving into the intersection or merely moving up to the curb before turning.

¶10 Defendant's expert, Reynolds, is an expert in accident reconstruction. However, Plaintiff sought to disqualify Reynolds from testifying as an expert for the reason that the facts chosen by Reynolds, upon which he based his expert analysis, consisted of the "self-serving testimony provided by Childs at his deposition nearly eighteen months after the collision for which this testimony was contradictory to Childs' hand written statement at the scene of the collision as well as [Plaintiff's] trial testimony."[9]

¶11 At trial, Reynolds was asked:

Q Why did you put Mr. Childs' vehicle starting right there?
A This is the position taken from his deposition that he stopped at the stop bar... .[10]
Q Have you been presented or provided Mr. Childs' statement he gave to the police?
A Yes, I have.
Q Does it in that statement state where he stopped?
A I don't believe--no, it does not.
Q So have you been provided his trial testimony?
A Yes, I have. [11]
Q [] You've read Mr. Childs' trial deposition, haven't you?
A The trial transcript?
Q Yes.
A Yes.
Q And you've read his deposition, correct?[12]
A That's correct.
Q And you used the deposition to formulate your opinion, correct?
A That is correct.
Q And both his trial testimony and his deposition testimony both say he stopped at the stop line.
A They were consistent, yes.
Q Does the statement he gave to the police mention where he stopped at any particular point?
A No, he does not.
Q Why did you use ... his deposition testimony as to where he stopped?
A The reason is when you're doing a calculation, you have to have a known starting point somewhere and ... in some accidents where there's actually a collision, you have marks there that you can go back from, known points. In this particular case, there was no collision. We have no known contact point for Mr. Childs' vehicle, so what I have to rely on is his stated position there at the stop line, which is also a legal requirement to stop at the stop line or the stop bar.[13]

¶12 The trial court denied Plaintiff's attempt to disqualify Reynolds' testimony. The matter was submitted to a jury, which deliberated five hours before it returned a verdict. Nine jurors found Plaintiff was 69 percent contributorily negligent, and Defendant Childs was 31 percent negligent. The trial court therefore entered judgment in favor of all Defendants. Both Plaintiff and Defendants appealed the judgment.[14]

STANDARD OF REVIEW

We must affirm a jury verdict if there is any competent evidence reasonably tending to support it, evidence which is relevant and material to the issue to be determined. Jos. A. Coy Co. v. Younger, 1943 OK 160, 192 Okla. 348, 136 P.2d 890. We do not weigh the evidence. We consider all the evidence tending to support the verdict, together with every reasonable inference from it, and must affirm unless there is an entire absence of proof on a material issue.

Covel v. Rodriguez, 2012 OK 5, ¶ 11, 272 P.3d 705, 710.

ANALYSIS

¶13 The sole issue on appeal is whether Defendant's expert witness was improperly allowed to testify. We review this trial court decision using the clear abuse of discretion appellate standard. Christian v. Gray, 2003 OK 10, ¶ 42, 65 P.3d 591, 608.

¶14 Plaintiff's first allegation of error in this regard is that the trial court erred in its Christian/Daubert "gatekeeping" role[15] when it permitted Defendants' expert witness Reynolds to testify because he "inappropriately gave expert opinion on the placement of [Defendant] Childs' vehicle for which he had no scientific bases [sic]."[16] Plaintiff further argues "the placement of Childs' vehicle was a heavily contested fact in issue, and there was no scientific or physical evidence to pinpoint the position of Childs' vehicle... ."[17] Plaintiff's second allegation of error regarding this witness closely aligns with the first, and centers on the allegation that the expert's testimony failed four foundational challenges set out in Christian and Daubert.[18]

¶15 Those questions are set out in Christian:

Daubert provided a list of factors for the trial judge to consider when determining the admissibility of evidence. They include: 1. Can the theory or technique be, or has it been, tested; 2. Has the theory or technique been subjected to peer review and publication; 3. Is there a "known or potential rate of error ... and the existence and maintenance of standards controlling the technique's operation;" and 4. Is there widespread acceptance of the theory or technique within the relevant scientific community. Daubert, 509 U.S. at 593-594, 113 S.Ct. 2786. The inquiry is a flexible one, and focuses on the evidentiary relevance and reliability underlying the proposed submission, and not on the conclusions they generate. Id. 509 U.S. at 595, 113 S.Ct. 2786.

Christian v. Gray, 2003 OK 10, ¶ 8, 65 P.3d 591, 597--98. Christian set out the proper use of the Daubert analysis:

We agree ... that a Daubert inquiry will be limited to circumstances where the reliability of an expert's method cannot be taken for granted. Thus, a Daubert challenge includes an initial determination of whether the expert's method is one where reliability may be taken for granted.

Christian, at ¶ 11, at, 599--600 (footnote omitted). The Christian Court then explained the trial judge's gatekeeping role:

Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Christian, at ¶ 9, at 598 (emphasis added). In other words, a Christian/Daubert analysis presupposes there are facts in issue, and looks to determine whether the reasoning or methodology used by the expert to arrive at his opinion is properly applied to those preexisting disputed facts. A Christian/Daubert analysis is not applied to the underlying facts themselves, nor to the "conclusions they generate" (Christian, at ¶ 8, 597--98), but rather is applied only to the expert's methodology or analysis used to account for the disputed facts and render a conclusion that could be helpful to the jury.

¶16 Inconsistency in an expert's testimony relating to which facts the expert relied on--apart from the underlying scientific methodology used to analyze those facts--should be resolved by the finder of fact after both sides have had the opportunity to point out or defend those inconsistencies. Nowhere do we find that allegedly inconsistent factual testimony of an expert is part of a Daubert analysis. The validity of the underlying facts, upon which the expert relies for his analysis, is the province of the jury, but not part of the trial court's gatekeeping action.

The conclusions and opinions of the expert witnesses were in conflict. ... When the evidence is conflicting, it is for the jury to decide.

Covel v. Rodriguez, 2012 OK 5, ¶ 17, 272 P.3d 705, 712.

Credibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts, whether court or jury, and not questions of law for the Supreme Court on appeal. Video Independent Theatres, Inc. v. Cooper, 421 P.2d 833 (Okl.1966), 26 A.L.R.3d 1308.

Cent. Plastics Co. v. Goodson, 1975 OK 71, ¶ 29, 537 P.2d 330, 335.

¶17 With this framework in mind, we now examine the issue raised by Plaintiff.

¶18 Prior to giving his testimony to the jury, Reynolds was asked, out of the presence of the jury, to describe what evidence he used upon which to arrive at his opinion. Reynolds stated he used Childs' sworn deposition and trial testimony as the basis for his accident reconstruction calculations, rather than the written statement given immediately after the accident.

¶19 Plaintiff's attorney then asked:

Q In your field, when one witness gives two separate statements, is there anything in your field, any methodology or scientific basis to pick one statement over the other when you incorporate it into a major conclusion?
A Not that I'm aware of.
Q And that hasn't been tested, has it?
A Not that I'm aware of.
Q Has that ever been subject to peer review?
A Not that I'm aware of. ...[19]

¶20 Moments later, the trial court stated:

[]The way I hear the testimony from Mr. Reynolds is that he applied his scientific calculations, which the calculations, themselves, I did not hear testimony that the calculations are not scientifically accepted. The issue is using as the basis of the calculation the defendant's own exact location as a--there has to be a point at which the calculation has to begin, otherwise there can be no calculation. ... I think it is very reasonable that a juror could infer that the statement--the testimony of Mr. Childs is inconsistent.

The fact that Mr. Reynolds chose to assign a location based on what Mr. Childs said in his deposition, I'm going to permit the opinion and overrule the motion to exclude it.[20]

¶21 The trial court correctly admitted the testimony. Plaintiff misapplied the Christian/Daubert analysis by attempting to shift the focus of that analysis from the methodology used by Reynolds (which is not in dispute), to the underlying facts chosen by Reynolds, upon which he based his unquestioned analysis.[21] His choice of which of Childs' statements to use in his analysis is a proper cross-examination subject, but not the subject of a Christian/Daubert analysis, which "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Christian, ¶ 9, at 598 (emphasis added). The trial court's gatekeeping role is designed to test the expert or scientific means by which the expert arrives at a conclusion, not a test of the underlying facts upon which the expert relies. Plaintiff's question, set out above, clearly asked the expert why he chose one statement over another, but then incorrectly applied the Christian/Daubert test to the expert's reason why that choice was made. The trial court correctly understood this and permitted the expert to testify. We find no error.

¶22 The expert was then subjected to extensive cross-examination by Plaintiff regarding the expert's choice of facts, thereby revealing to the jury any conflicts between Childs' written statement and his testimony at trial. The jury was free to either accept or disregard all, some, or parts of the expert's opinion. Plaintiff admits in his brief-in-chief that the jury had as much information as did the expert regarding the position of Childs' vehicle.[22]

¶23 We disagree with Plaintiff's assertion on appeal that the five hours between submission of the case to the jury and the rendition of the verdict suggests Defendant's expert witness' testimony injected confusion into the deliberations. We note that the jury's contributory negligent verdict was unusually precise: 69-31 percent, and that during the five-hour deliberation, the jury asked for: a large photograph of the intersection;[23] tape to affix photographs to the wall;[24] the bailiff to notify a juror's family members that they would be in deliberation;[25] and ordered pizza and soft drinks.[26] We can equally infer from these requests the jury took their role seriously and gave due consideration to the well-tried case.

In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon. Hames v. Anderson, 571 P.2d 831, 833 (Okla.1977); Wat Henry Pontiac, Inc. v. Pitcock, 301 P.2d 203, 204 Fourth Syllabus (Okla.1956). Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal. Lawton Refining Co. v. Hollister, 86 Okla. 13, 205 P. 506 Second Syllabus (1922). In an appeal from a case tried and decided by a jury an appellate court's duty is not to weigh the evidence and determine which side produced evidence of greater weight [Tapley v. Patton, 349 P.2d 507, 508 (Okla.1960) ], i.e. it is not an appellate court's function to decide where the preponderance of the evidence lies--that job in our system of justice has been reposed in the jury. In a jury-tried case, it is the jury that acts as the exclusive arbiter of the credibility of the witnesses. Holley v. Shepard, 744 P.2d 945, 947 (Okla.1987). Finally, the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it. Park v. Security Bank and Trust Company, 512 P.2d 113, 118 (Okla.1973).

Florafax Int'l, Inc. v. GTE Mkt. Res., Inc., 1997 OK 7, ¶ 3, 933 P.2d 282, 287.

¶24 Finding no trial court error occurred, and finding competent evidence exists supporting the verdict, the trial court's judgment on the verdict is without error.

CONCLUSION

¶25 The trial court's March 22, 2016, Journal Entry of Judgment is affirmed.

¶26 AFFIRMED.

 

FISCHER, P.J., and RAPP, J., concur.

FOOTNOTES

[1] R. 1.

[2] Plaintiff's expert calculated his speed as 44.18 MPH (Transcript Vol. II, p. 144, l. 22). Plaintiff testified his speed was 35-38 MPH (Transcript, Vol IV, p. 396, l. 13), and Defendant's expert calculated his speed at 70.32 MPH (Transcript, Vol. IV, p. 499, l 21.) The speed limit at this intersection is 40 MPH.

[3] R. 156.

[4] R. 349, Transcript of Jury Trial, March 1, 2016, vol. 2, p. 199, ll 23.

[5] Id. p. 201, l. 5-8.

[6] Id. p. 201, ll.24-25; p. 202, ll. 1-3.

[7] Id. p. 209, ll. 4-8.

[8] R. 351, Transcript of Jury Trial, vol. IV, March 3, 2016, p. 402, ll. 9-15.

[9] Brief-in-Chief, October 20, 2016, p. 2.

[10] R. 351, Transcript March 3, 2016, vol. IV, p. 481, ll. 22-25.

[11] Id., p. 482, ll. 6-10.

[12] Id. p. 482, ll. 20-25.

[13] Id. p. 483, ll. 1-22.

[14] Defendants' counter-appeal raised issues that would only be relevant in the event this Court granted Plaintiff a new trial. Because we find no reversible error occurred, we need not address any issues raised in Defendants' counter-appeal. Therefore, Appellant's September 29, 2016, motion to dismiss Appellees' counter-petition is denied.

[15] Christian v. Gray, 2003 OK 10, 65 P.3d 591, noted the trial court's gatekeeping capacity already existed in Oklahoma, and stated Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Kumho Tire Co., Ltd. v. Patrick Carmichael et al., 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), were but refinements to existing Oklahoma law.

[16] Brief-in-Chief, October 20, 2016, p. 10.

[17] Id.

[18] Id. at 16.

[19] R. 351, Transcript of Jury Trial, March 3, 2016, Vol. IV, p. 435, ll. 12-21

[20] R. 351, Transcript of Jury Trial, March 3, 2016, Vol. IV, p.442, ll. 12-25, p. 443, ll. 1-4.

[21] His analysis consisted of applying well-established physics principles of speed, time, length, and acceleration to fixed points at the scene of the accident, such as skid marks, line of sight measurements, and where the motorcycle came to rest.

[22] Brief-in-Chief, p. 10-11; 16.

[23] Jury Question No. 1.

[24] Jury Question No. 2.

[25] Jury Question No. 3.

[26] Jury Question No. 4.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 92, 744 P.2d 945, 58 OBJ 2786, Holley v. Shepard
Cited
 1997 OK 7, 933 P.2d 282, 68 OBJ 306, Florafax International, Inc. v. GTE Market Resources, Inc.
Discussed
 1956 OK 230, 301 P.2d 203, WAT HENRY PONTIAC v. PITCOCK
Cited
 1960 OK 23, 349 P.2d 507, TAPLEY v. PATTON
Cited
 1922 OK 19, 205 P. 506, 86 Okla. 13, LAWTON REF. CO. v. HOLLISTER
Discussed
 1966 OK 219, 421 P.2d 833, VIDEO INDEPENDENT THEATRES, INC. v. COOPER
Cited
 1973 OK 72, 512 P.2d 113, PARK v. SECURITY BANK AND TRUST COMPANY
Cited
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2012 OK 5, 272 P.3d 705, COVEL v. RODRIGUEZ
Discussed at Length
 1975 OK 71, 537 P.2d 330, CENTRAL PLASTICS COMPANY v. GOODSON
Discussed
 1977 OK 191, 571 P.2d 831, HAMES v. ANDERSON
Cited
 1943 OK 160, 136 P.2d 890, 192 Okla. 348, JOS. A. COY CO. v. YOUNGER
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA