Aloma BURGESS; Linda Burgess; Leslie Burgess; James M. Burgess; Stephen Burgess, a minor who sues by and through Linda Burgess, his mother and next friend; and Julie Burgess, a minor who sues by and through Leslie Burgess, her mother and next friend, Appellants,

v.

FRIEDMAN & SON, INC., d/b/a Oklahoma Paper Mills Supply Co., a Colorado Corporation, Appellee.

No. 54487.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 6, 1981.

Released for Publication by Order of Court of Appeals Dec. 11, 1981.

Howard K. Berry, Jr., Mark T. Koss, Legal Intern, Berry & Berry, P. C., Oklahoma City, for appellants.

David D. Wilson, Oklahoma City, for appellee; Baker, Baker & Wilson, Oklahoma City, of counsel.

BRIGHTMIRE, Judge.

This is a negligence action brought by the driver and passengers in an automobile to recover damages for personal injuries sustained after hitting a large semitrailer waste paper truck that had run a boulevard stop sign.

The case was submitted to a jury under comparative negligence instructions. It found the defendant's truck driver to be only 51 percent at fault and fixed the damages for each of the plaintiffs accordingly. The trial court entered judgment awarding each plaintiff 51 percent of the damage assessment and plaintiffs appeal.

Several contentions are advanced regarding the applicable principles anent our comparative negligence law. They can be consolidated into two decisive ones, namely: (1) Was there evidence sufficient to raise a submissible question concerning the automobile driver's negligence? (2) Was it permissible for the trial court to reduce the damages fixed for the faultless plaintiffs 51 percent?

We answer both questions in the negative.

I

The petition states at about 1700 hours in the afternoon on October 20, 1978, Leslie Burgess was driving her car, a Ford Maverick, westward on S.W. 59th Street in Oklahoma City. With her in the car were her minor daughter, her twin sister, her minor nephew and her parents. As they approached the intersecting I–240 southbound off ramp, defendant's loaded eighteen wheeler left I–240 and began a descent down the ramp. At a speed of between 10 and 25 mph the heavy truck ran the stop sign facing it and crossed the path of the Maverick. Unable to stop, the Burgess vehicle crashed into and went under the rear portion of the trailer just forward of the rear wheels. Its six occupants were severely injured.

In its answer the principal defendant, Friedman & Son, Inc., denied plaintiffs' allegations generally and defensively pleaded that: (1) plaintiffs were contributorily negligent; (2) the wreck was caused by the negligence of a third party over whom it had no control; (3) the accident was unavoidable; (4) its truck driver used reasonable care after being confronted with a sudden emergency he did not create. No facts were alleged in support of these conclusions; but later, it did file an amended answer stating that the duty breached by the passengers in the Burgess car—including two small children—consisted of failing to warn the driver of "the impending danger that they knew was occurring immediately prior to the accident" and this failure contributed to the cause of the accident.

The case was tried to a jury November 5 and 6, 1979. Defendant put its truck driver on the stand who testified that while he was proceeding south on I–240 at about 55 mph he had occasion to apply his brakes and discovered he had none. His air pressure warning buzzer came on, he said, indicating his brake air pressure had dropped below 60 pounds—an insufficient level. And according to the driver, the rig's automatic back up emergency brake system also failed to function. As a result the driver began looking for "somewhere to go" to escape the "solid wall of traffic in front of" him. Soon he saw the 59th Street exit ramp, headed for it, began downshifting and managed to slow his speed some as he neared 59th Street. He could not warn by horn, he said, because, incredibly, the truck had only an air horn which would not work without air pressure. He offered no excuse for not switching his flashing lights on. As he neared 59th he looked to the right and he said he saw eastbound traffic starting to stop. He then looked to the left and saw no cars. His truck went right through the stop sign and headed straight south across 59th. When his tractor had reached the eastbound lane he "felt a thud." He looked and saw the tail end of a car "sticking out" from under his trailer. The truck stopped after dragging the car 41 feet southward.

The defensive effort of trying to prove an unusual brake failure was weakened considerably by the driver's admission that no one

had ever told him directly that anything was wrong with the brakes on his Kenworth tractor and that he continued to drive the truck without knowing whether anything had ever been done to the brakes. And when this and other circumstances are coupled with the rejected rebuttal testimony of the service manager at the Kenworth garage where the tractor was taken after the collision, the occurrence of a brake failure has to be considered quite improbable. The manager, who was qualified as an expert on tractor brakes, said his mechanics drove the tractor around in the yard and, after further checking the braking system, found no need to write up a repair ticket. The manager was not permitted by the court to testify that in his expert opinion, based on information furnished him by employees under his supervision, the truck's brakes had never failed.[1]

The trial court correctly found, as a matter of law, that the passengers in the Maverick breached no duty contributing to the cause of the wreck. However, he did instruct the jury to determine whether the Maverick driver was negligent and told them that if she was then to compare it with whatever negligence they found the truck driver guilty of. The jury did so and inexplicably found the truck driver only 51 percent responsible and the Ford driver 49 percent. It then fixed the amount of damages for each of the people in the car and the trial judge gave each plaintiff a judgment for 51 percent of his or her damage.

All plaintiffs appeal. The passengers contend their recovery from the defendant should not have been reduced and the driver argues there was not sufficient evidence to warrant a finding of negligence on her part.

## II

■ We will deal first with the question of whether the damage award to the fault-

less plaintiffs should have been pared by 49 percent.

Reduction of the passengers' awards was undoubtedly the result of a misinterpretation of *Laubach v. Morgan*.[2] The trial court's overbroad extension of *Laubach* was rejected by the high court in *Boyles v. Okla. Nat. Gas. Co.*,[3] and the common law rule of joint and several liability was found to be quite viable in this state in situations where negligence-free plaintiffs are involved. In other words where a plaintiff has not causally contributed to his harm there is no negligence with which to compare that of a defendant regardless of the defendant's degree of neglect.

And this makes sense. Our comparative negligence law,[4] as *Laubach* points out, was designed to ameliorate the arbitrary harshness of the common law defense of contributory negligence available to defendants in this state prior to 1973, not to compound it by abridging the recovery innocent plaintiffs would have been entitled to earlier. To an unerring plaintiff's charge of negligence, the defense of contributory negligence has never been available. And it follows quite logically that if the defense of contributory negligence was not available in a given situation prior to 1973 the law of comparative negligence did not make it available in the same situation after 1973. An unculpable victim of negligence was entitled to 100 percent of a jury award before 1973 and his entitlement to a 100 percent recovery remained unimpaired after 1973.

## III

Next we consider Leslie Burgess' plea of innocence.

■ In determining her legal status certain fundamental legal concepts should be kept in mind. To begin with, of course, the burden of proving that Leslie Burgess negligently contributed to the accident is

1. It appears to us the court should have admitted this evidence under the liberalized provisions of the new Evidence Code. 12 O.S.1978 Supp. § 2704.

2. 588 P.2d 1071 (Okl.1978).

3. 619 P.2d 613 (Okl.1980).

4. 23 O.S.1979 Supp. §§ 13, 14.

upon Friedman, the party who alleged it. The law presumes that a duty established by law or custom will be duly performed. One to whom a duty is owed has a right to assume that it will be performed; he is not required to anticipate negligent acts or omissions of others. And while such an assumption does not excuse one from using due care for his own safety, it does not require, in case of a motorist, for instance, that a driver become a paranoiac and suspiciously eye every driver on the road as though he is about to commit a harmful tort. To the contrary, the assumption relieves him from having to anticipatorily take active measures to protect himself against potential duty violations by others.[5]

■ Here the Ford driver was proceeding in a lawful manner westward on a busy four lane thoroughfare. This is undisputed. It is also undisputed that the truck driver chose not to coast to a stop on the wide center median or the extreme outside edge of I–240 but to proceed down an exit ramp without brakes (if one assumes he had none) where he knew he would have to run a stop sign and drive straight across a busy traffic way.

As we said, defendant does not say Leslie Burgess was violating any traffic law as she approached the ramp intersection. Its theory is that she could see about 200 feet up the ramp from as far back as 150 feet and because she put down only 6 feet of skid marks she "either reacted awfully slowly ... or she just wasn't paying attention"; or as counsel speculated in another question during cross examination of a witness, "Either Miss Burgess saw the truck and didn't do anything or just flat never saw the truck at all until the truck was out in the intersection."

One advantage defendant had was that Leslie Burgess suffered, among other things, head injuries and could remember nothing about the accident. The first thing she remembered was coming to in the hospital emergency room. She could not therefore tell the jury what she did or did not see prior to the wreck. There was, however, some evidence bearing on defendant's conjecture and that is the testimony of the investigating policewoman to the effect that Leslie Burgess told her at the scene "she just did not see the truck until she was upon it." And the reason she did not, the officer opined, may well have been the sun, "because she was driving right into it." Defendant's driver, it will be recalled, said he looked to his right and then to his left and denied ever seeing plaintiffs' vehicle until after it struck the trailer. Why plaintiffs should have been able to see the truck when the truck driver was unable to see their car is left unexplained. Ordinarily, a line of vision or sight in a situation such as we have here is reciprocal.

But be that as it may, the fact remains that there is no evidence that Leslie Burgess was not attentive to her driving or that she saw the truck in time to avoid hitting it and at that instant failed to use due care in the emergency situation created by defendant. The fact that Leslie Burgess may have reacted slowly is not per se a breach of a duty. · Defendant admits that timewise it is talking about only two ticks of a watch and under the circumstances of this case Leslie Burgess could well have been attentive to her driving—she could, for example, have been checking traffic activity behind or to the side of her in the other two adjoining lanes and still not have sooner seen the unlawful invasion of her right-of-way. The truck driver's admitted election to run the stop sign in question—an incredibly wilful act—was an election to assume all attending inherently dangerous risks and to take drivers the way they are—both slow and fast reactors.

We hold the trial court should have held as a matter of law that Leslie Burgess was not shown to be contributively culpable, and thus only the issue of defendant's truck driver's negligence should have been submitted to the jury.

The judgment appealed is therefore modified to the extent of awarding each of the plaintiffs a judgment against the defendant

5. *Powell Bros. Truck Lines v. Piatt,* 92 F.2d 879

(CA.10 Okl., 1937).

for the full amount of damages the jury found each plaintiff sustained together with interest from November 7, 1979, the date plaintiffs' petition was filed. Plaintiffs are granted judgment for the costs they have incurred in both the trial and appellate courts.

BACON, P. J., and BOYDSTON, J., concur.